IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY HENSON and WILLIAM CINTRON,<br><br>    Plaintiffs,<br><br>  v.<br><br>TURN, INC.,<br><br>    Defendant. | No. C 15-01497 JSW<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO STAY THIS ACTION AND COMPEL ARBITRATION** |

This matter comes before the Court upon consideration of the motion to dismiss, or in the alternative to stay, this action to compel arbitration filed by Defendant Turn, Inc. ("Turn"). The Court has considered the parties' papers, relevant legal authority, the record in this case, and it HEREBY GRANTS Turn's motion.

## BACKGROUND

Plaintiffs are residents of New York and subscribers of Verizon's mobile cellular and data service for use with Internet-enabled smartphones. (Complaint ("Compl." at ¶¶ 16, 17.) Defendant Turn operates as an online advertising clearinghouse for online companies to general targeted advertising programs. (*Id.* ¶ 19.) Verizon partnered with Turn to implement such a targeted advertising program that uses Verizon's Unique Identifier Header ("UIDH") to help online advertisers deliver relevant advertisement to subscribers based upon the usage data from their mobile devices. The UIDH is a device-specific anonymous identifier that Verizon adds to Internet requests transmitted over its wireless network. (Amicus Curiae Brief of Verizon Wireless at 3.)

1  Verizon provides to its partners, including Turn, information about the market segments associated
2  with the UIDHs for subscribers, which the partners then use to direct advertising campaigns to the
3  specific audiences they are intended to reach.  (*Id.*)  As Plaintiffs contend, the allure of online
4  advertising lies in its ability to deliver targeted advertising, catered to the individual web traffic
5  patterns of the individual subscriber. (Compl. at ¶¶ 25-27.)  The tracking of online users'
6  information is achieved by use of "cookies" – pieces of code that are transmitted from a website to
7  an individual's web browser.  (*Id.* ¶ 27.)

8  However, as the technology developed to track users' Internet traffic information for the
9  purpose of delivering targeted advertisements, and in light of widespread privacy concerns, major
10 web browsers created features to allow users to delete the tracking cookies from their web sessions.
11 (*Id.* ¶ 30.)  Plaintiffs allege that Turn violated users' reasonable expectations of privacy by creating
12 zombie cookies which monitored their behavior surreptitiously and that users could not detect, delete
13 or block.  (*Id.* ¶¶ 34-35.)  Based on these allegations, Plaintiffs filed this putative class action suit for
14 violation of New York General Business Law section 349 for "deceptive acts or practices in the
15 conduct of any business, trade or commerce" and for trespass to chattels.  (*Id.* ¶¶ 75-83; 84-93.)

16 Turn filed a motion to dismiss, or in the alternative to stay, this action to compel arbitration
17 based on their status as a non-signatory to the agreements between the subscriber plaintiffs and their
18 service provider, Verizon.  Turn contends that Verizon, in its subscription contracts, specifically
19 provides tailored advertising programs to its subscribers who do not choose to opt out and mandates
20 that all disputes that in any way relate to the subscription agreement be resolved by arbitration.
21 Accordingly, Turn moves to dismiss or to stay this action pending resolution of the parties' disputes
22 in arbitration.

23 The Court shall address other, relevant facts in the remainder of this order.

**ANALYSIS**

25 Turn moves to dismiss or to stay this action in favor of arbitration on the grounds that
26 Plaintiffs should be compelled by contract to submit their dispute to arbitration.

27 Pursuant to the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid,
28 irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation

2

of any contract." 9 U.S.C. § 2. The FAA represents the "liberal federal policy favoring arbitration agreements" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Under the FAA, "once [the Court] is satisfied that an agreement for arbitration has been made and has not been honored," and the dispute falls within the scope of that agreement, the Court must order arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967).

The "central purpose of the [FAA is] to ensure that private agreements to arbitrate are enforced according to their terms." *Mastrobuono v. Shearson Lehman Hutton. Inc.*, 514 U.S. 52, 53-54 (1995). The "preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered, a concern which requires that [courts] rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 473 U.S. 614, 625-26 (1985) (quotations omitted). The FAA is "an expression of 'a strong federal policy favoring arbitration as an alternative means of dispute resolution.'" *Ross v. American Express Co.*, 547 F.3d 137, 142 (2d Cir. 2008) (quoting *Hartford Accident & Indemnity Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001)). Notwithstanding the liberal policy favoring arbitration, by entering into an arbitration agreement, two parties are entering into a contract. *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 479 (1989) (noting that arbitration "is a matter of consent, not coercion."). Arbitration is a matter of contract, and therefore a party cannot be required to submit to arbitration any dispute which is has not agree so to submit. *Vera v. Saks & Co.,* 335 F.3d 109, 116 (2d Cir. 2003) (citations omitted). Accordingly, "[w]hile the FAA expresses a strong federal policy in favor of arbitration, the purpose of Congress in enacting the FAA 'was to make arbitration agreements as enforceable as other contracts, *but not more so*." *Cap Gemini Ernst & Young U.S., LLC v. Nackel*, 346 F.3d 360, 364 (2d Cir. 2003) (quotations omitted).

Plaintiffs contend that Turn was not a signatory to the arbitration agreements between Plaintiffs and Verizon, and therefore did not voluntarily submit to arbitration and may not be compelled to arbitration.

3

The question of whether a nonsignatory to an arbitration clause can be bound by the agreement is analyzed under ordinary contract and agency principles. *See Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185, 1187-88 (9th Cir. 1986). Among these principles, are "(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (citing *Thompson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)). Equitable estoppel "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Id.* (citing *Washington Mutual Fin. Group, LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004)). In the arbitration context, nonsignatories can be held to arbitration clauses where the nonsignatory "knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement." *Id.* (citations omitted). Equitable estoppel is a doctrine that "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burden that contract imposes." *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013).

Here, because New York law governs the subscribers' contracts with Verizon, the Court applies New York law to determine whether Plaintiffs may be compelled to arbitrate their claims against Defendant Turn. A signatory to an arbitration agreements is estopped "from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Hoffman v. Finger Lakes Instrumentation, LLC*, 789 NY.S.2d 410, 415 (Sup. Ct. 2005); *see also Merrill Lynch Int'l Finance, Inc. v. Donaldson*, 895 N.Y.S.2d 698, 703 (Sup. Ct. 2010) (holding that circumstances warranting estoppel include "when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted conduct by both the non-signatory and the other signatory to the contract.").

There would be no different outcome under California law. Under California law, a defendant "that is a non-signatory to an agreement providing for arbitration may compel arbitration of claims by a plaintiff that is a signatory to such an agreement on the basis of equitable estoppel, so long as two requirements are met: (1) the subject matter of the dispute must be 'intertwined with the contract providing for arbitration'; and (2) there must be a 'relationship among the parties of a nature

4

that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement.'" *In re Apple iPhone 3G Products Liability Litig.*, 859 F. Supp. 2d 1084, 1096 (N.D. Cal. 2012) (citing *In re Apple & AT&TM Antitrust Litig.*, 826 F. Supp. 2d 1168, 1176-78 (N.D. Cal. 2011); *see also In re Carrier IQ, Inc. Consumer Privacy Litig*, 2014 WL 1338474, *5 (N.D. Cal. 2014) (citing *Mundi v. Union Security Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009)) ("a signatory may required to arbitrate a claim brought by a non-signatory 'because of the close relationship between the entities involved, as well as the relationship and duties in the contract and the fact that the claims were intertwined with the underlying contractual obligations.'")).

Accordingly, the Court must determine whether the contract here – between Verizon and its subscribers which provides for arbitration as the mechanism for dispute resolution – is so intertwined with the issues against the nonsignatory and the allegations concern substantially interdependent and concerted conduct by both the non-signatory and the other signatory to the contract. *See Hoffman*, 789 N.Y.S.2d at 415; *Donaldson*, 895 N.Y.S.2d at 703. Because Plaintiffs' claims regarding the behavior of a non-signatory directly arises from an expressly incorporated provision in their subscriber contracts with Verizon, the Court finds the lawsuit is inextricably intertwined with the agreement to arbitrate.[1] The defense to the lawsuit will necessarily require introduction of the subscriber agreements. Turn argues that the Verizon subscription agreements incorporate the company's privacy policy which specifically discloses the fact that Verizon partners with other

---

[1] It is telling, although not dispositive, that Plaintiffs originally filed suit premised upon largely the same facts, against both Verizon Wireless and Turn. (Declaration of Michael H. Rubin, Ex. C-1.) Plaintiffs dismissed that suit just five days prior to filing the complaint against only Turn before this Court. Plaintiffs should not be permitted to avoid arbitration by artful pleading. *See, e.g., In re A2p SMS Antiturst Litig*., 972 F. Supp. 2d 478, 484 (S.D.N.Y. 2013) ("allowing parties to plead around or escape estoppel based solely on the matters alleged in a complaint, regardless of their bearing on the precise issues in litigation would run contrary to the long-standing [principals of equity].").

companies to provide tailored advertising programs to its subscribers.[2] A non-signatory to the arbitration contract may enforce the agreement where the contract is a defense to claims because "the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement." *Birmingham Assocs. v. Abbott Labs.*, 328 F. App'x 42, 44 (2d Cir. 2009). Whether the claims require introduction of the subscriber contracts, it is certain the Turn's defense requires an analysis of the contract between Verizon and its subscribers. Because the subscriber agreements with Verizon clearly anticipate the introduction of third parties to play a role in connection with the delivery of targeted advertising, Turn must invoke the Verizon agreements as a defense.

Accordingly, the Court finds that the issues to be resolved concern substantially interdependent and concerted conduct by both the non-signatory and the other signatory to the contract and are inextricably intertwined with the agreement to arbitrate. Here, Turn contends that it acted in partnership with Verizon to provide services that were disclosed to Plaintiffs in their Verizon subscriber agreements. Therefore, Turn's motion to compel arbitration under those same agreements is GRANTED.

In its motion, Turn requests the Court stay this matter pending the outcome of arbitration to prevent prejudice to nonparty Verizon because "[p]rejudice to a third party undeniably provides a basis for staying litigation pending arbitration of a related dispute." (Motion at 15 (citing *Fujian Pac. Elec. Co. v. Bechtel Power Corp.*, No. C-04-03126-MHP, 2004 WL 2645974, *8 (N.D. Cal. Nov. 18, 2004) (staying action to prevent prejudice to nonparties that had an arbitration agreement with plaintiffs).) Plaintiffs did not respond or object to the request to stay this action pending arbitration. Accordingly the Court STAYS this case pending arbitration of the matter.

---

[2] Verizon's Privacy Policy provides, in pertinent part:

You may see third-party advertisements on some Verizon websites, services, or devices. In some instances, third-party advertisers seek to provide advertising that they believe is more relevant to your interests. In these instances, cookies may be placed and used by advertising companies to collect information about your visit to our websites and may be combined with similar information obtained from other websites. We also may provide third-party advertisers with geographical or demographic information that allows them to tailor their ads.

(Declaration of Gregory Zidow, Ex. C-1.)

6

## CONCLUSION

Based on the foregoing, the Court GRANTS Turn's motion to compel arbitration, and it HEREBY STAYS this action pending completion of arbitration. The parties shall file joint status reports every 120 days in which they advise the Court of the status of the arbitration proceedings and when they expect that the stay may be lifted or the case may be dismissed. The parties first joint status report shall be due 120 days from the date of this Order.

**IT IS SO ORDERED.**

Dated: March 14, 2016

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

Case 4:15-cv-01497-JSW Document 58 Filed 03/14/16 Page 8 of 8